| | |
|---|---|
| **Fill in this information to identify the case:** | |
| Debtor Name:  Richard W. Johnson, Jr. and Alyse M. Johnson | |
| United States Bankruptcy Court for the Eastern District of Pennsylvania | |
| Case number: 21-10054 | |

__X__   Check if this is an amended filing

Official Form 425A

# Plan of Reorganization for Small Business Under Chapter 11    02/20

Richard W. Johnson, Jr. and Alyse M. Johnson's (the "Debtors") **First Amended** Plan of Reorganization, Dated **August 16** ~~July 26~~~~April 8~~, 2021 (the "Plan")

## Background for Cases Filed Under Subchapter V

### A. Description and History of the Debtor's Business

The Debtors have been married since 1997.  Mr. Johnson is an attorney licensed to practice since 1993.  Since 1996, Mr. Johnson has conducted his law practice as a sole proprietorship, which is affiliated with a law firm that compensates Mr. Johnson for recoveries achieved by Mr. Johnson on files (mainly in the nature of personal injury) on which he works.  Although Mrs. Johnson is employed, the majority of the marital income is generated by Mr. Johnson.

For some time, the Debtors have been addressing their unpaid tax liabilities in arrears until calendar year 2020, when the Covid-19 pandemic had a catastrophic effect on Mr. Johnson's law practice due to the closure of the various court systems.  Unable to litigate cases and generate his regular contingency income therefrom, the Debtors' income in 2020 sharply declined by about 40% from the prior year's income.  With increased pressure from the taxing authorities for payments, which the Debtors were unable to make, the Debtors filed the within chapter 11, Subchapter V case for the primary purpose of providing a more orderly way to pay their taxes in arrears and other obligations.

### B. Liquidation Analysis

To confirm the Plan, the Court must find that all creditors and equity interest holders who do not accept the Plan will receive at least as much under the Plan as such claim and equity interest holders would receive in a chapter 7 liquidation. The mortgage balance on the Debtors' residence exceeds the value of the residence, and their remaining assets are fully secured and encumbered by a purchase money lien, six federal tax liens and three Pennsylvania Department of Revenue liens.   Accordingly, if the Debtors' assets were to be liquidated, unsecured creditors would receive nothing because the Debtors have no equity in their assets.

### C. Ability to make future plan payments and operate without further reorganization

The Debtors must also show that they will have enough cash over the life of the Plan to make the required Plan payments and operate their business.

The Debtors has provided projected financial information as attached Exhibit "A," which projections assume that the "Effective Date" (as defined in Section 8.02 below) will occur in **August**~~July~~ of 2021.

The Debtors' financial projections show that the Debtors will have projected "Disposable Income" (as defined by § 1191(d) of the Bankruptcy Code) for the selected five-year period described in § 1191(c)(2) of $**804,400**~~812,900~~~~677,050~~.

The final Plan payment is expected to be paid on the sixtieth month after the Effective Date.

**You should consult with your accountant or other financial advisor if you have any questions pertaining to these projections**

## Article 1: Summary

This Plan under chapter 11 of the Bankruptcy Code (the "Code") proposes to pay creditors of the Debtors from Disposable Income as more fully set forth in this Plan.

This Plan provides for:  0   classes of priority claims;

  2   classes of secured claims;

  1   classes of non-priority unsecured clams; and

  2   classes of equity security holders.

Non-priority unsecured creditors holding allowed claims are expected to ~~will~~ receive distributions, which the proponent of this Plan has valued at approximately 12.5~~8.2~~% of their unsecured claim~~has valued at approximately 11.6% cents on the dollar~~. This Plan also provides for the payment of administrative and priority claims.

All creditors and equity security holders should refer to Articles 3 through 6 of this Plan for information regarding the precise treatment of their claim. Your rights may be affected. You should read these papers carefully and discuss them with your attorney, if you have one. (If you do not have an attorney, you may wish to consult one.)

## Article 2: Classification of Claims and Interests

2.01  **Class 1** .............................   There are no allowed claims entitled to priority under § 507(a) of the Code (except administrative expense claims under § 507(a)(2) and priority tax claims under § 507(a)(8)) and, thus, no creditors in Class 1.

2.02  **Class 2** ...................................   Class 2 consists of the following claims, to the extent allowed as a secured claim under § 506 of the Code:

Class 2A consists of the allowed secured claim of The Bancorp Bank ("Bancorp), which has a valid and properly secured first priority mortgage on the Debtors' residence.

Class 2B consists of the allowed secured claim of Allegro Credit ("Allegro"), which is secured by a first priority, purchase money security interest in the Debtors' piano.

2.03  **Class 3** ..................................   Class 3 consists of all non-priority unsecured claims allowed under § 502 of the Code.

2.04  **Class 4** ...................................   Equity interests of the individual Debtors in property of the estate.

# Article 3: Treatment of Administrative Expense Claims, Priority Tax Claims, and Quarterly and Court Fees

| | | |
|---|---|---|
| 3.01 | **Unclassified claims** | Under section § 1123(a)(1), administrative expense claims and priority tax claims are not in classes. |
| 3.02 | **Administrative expense claims** | "Administrative Expense Claims" shall consist of the allowed claims of the Debtors' court-employed professionals, along with the Subchapter V Trustee (the "Trustee"). The Debtors estimate that the aggregate amount of allowed administrative expense claims (exclusive of post-petition alimony) shall not exceed $320,000. Each holder of an administrative expense claim allowed under § 503 of the Code will be paid pro rata from the Debtors' Disposable Income based upon their claims as allowed by this Court starting on the Effective Date of the Plan and continuing each month thereafter until paid in full. As projected, the Debtors believe that all Administrative Expense Claims shall be paid in full in monthly payments through January of 2022December of 2021. |
| 3.03 | **Priority tax claims** | Each holder of a priority tax claim, with interest that accrues thereon at the annual rate of 3%, will be paid each calendar quarter from the Debtors' Disposable Income pro rata starting in the fourth month following payment in full of all Administrative Expense Claims (presently projected to be April of 2022) and continuing until paid in full by January of 2026December of 2025, which is 60 months from the Petition Date. For purposes of the Plan, the Debtors have amortized each taxing authorities claim over a five-year period with annual interest at 3%, but payable in 15 equal quarterly payments over a four-year period starting in April of 2022 and ending in January of 2026December of 2025.<br><br>Holders of priority tax claims consist of the Internal Revenue Service (the "IRS") (for purposes of treatment under the Plan, the IRS secured claim shall be included in the treatment of the IRS priority tax claim as set forth below), and Pennsylvania Department of Revenue ("Revenue") and local income taxes payable to Council Rock School District ("Council Rock") and the Township of Wrightstown ("Wrightstown").<br><br>The IRS has an allowed secured claim of $58,728.42 and an allowed priority tax claim of $405,315.31443,539.25 for a combined claim of $464,043.73405,315.31502,267.67. Interest that would accrue on $464,043.73502,267.67 at an annual rate of 3% and amortized over a 60-month period is equal to $36,251.7639,237.87, which results in the IRS having an allowed priority tax claim of $500,295.49541,505.54 (the "IRS Priority Tax Claim"). , which shall apply payments received first towards their allowed secured claim, if any, and then to their allowed priority tax claim. The taxing authorities with an allowed secured claim shall retain their lien until their secured claim is paid in full.<br><br>Revenue has an allowed secured claim of $0 pursuant to Bankruptcy Code § 506(a) and an allowed priority tax claim of $69,336.74. Interest that would accrue on $69,336.74 at an annual rate of 3% and amortized over a |

60-month period is equal to $5,416.69, which results in Revenue having an allowed priority tax claim of $74,753.43 (the "Revenue Priority Tax Claim").

~~Based upon the Debtors' anticipated 2020 federal tax liability, which will not be quantified until their 2020 return is filed, the Debtors believe that the IRS will have a combined secured and priority tax claim in the amount of $450,000 (consisting of approximately $55,000 secured and approximately $395,000 priority taxes), all of which, for purposes of this Plan, shall be treated as a priority tax claim.~~

Council Rock has an allowed priority tax claim of $6,624.24. Interest that would accrue on $6,624.24 at an annual rate of 3% and amortized over a 60-month period is equal to $517.50, which results in Council Rock having an allowed priority tax claim of $7,141.74 (the "Council Rock Priority Tax Claim").

Wrightstown has an allowed priority tax claim of $8,771.56. Interest that would accrue on $8,771.56 at an annual rate of 3% and amortized over a 60-month period is equal to $685.25, which results in Wrightstown having an allowed priority tax claim of $9.456.81 (the "Wrightstown Priority Tax Claim").

~~The Debtors believe that Revenue has no secured claim under Bankruptcy Code § 506(a) and a priority claim of approximately $68,000, which includes an anticipated 2020 state tax liability of approximately $10,000.~~

The aggregate priority tax claims, with interest, as calculated above are as follows and therefore are entitled to the corresponding pro rata percentage of each priority tax claim payment made under the Plan:

| | | |
|---|---|---|
| IRS | $500,295.49~~541,505.54~~ | (84.6~~86~~%) |
| Revenue | $74,753.43 | (12.6~~12~~%) |
| Council Rock | $7,141.74 | (1.2~~1~~%) |
| Wrightstown | $9,456.81 | (1.6~~1~~%) |
| **Total** | **$591,647.47~~632,857.52~~** | |

Commencing in April of 2022 and continuing thereafter through January of 2026 (i.e., the five-year anniversary of the filing of the Debtors' bankruptcy case), the Debtors shall make the quarterly payments set forth in the cash flow projections at Exhibit A in the category entitled "Priority Tax Claims," which payments shall be allocated between the taxing authorities consistent with the above pro rata percentages. The foregoing quarterly tax payments are sufficient, in the aggregate, to pay all allowed priority tax claims (with interest at the annual rate of 3%) in full and within the five-year statutory time frame that the Debtors are permitted to do so. In addition, the Debtors have agreed to make a payment on the Effective Date in the amount of $5,000 to each of the IRS and Revenue as a prepayment of the amounts payable on account of their respective priority tax claims. Furthermore, the Debtors have agreed to make payments to the taxing authorities on account of their respective priority tax claims at intervals sooner and/or in amounts greater than those set

forth in the cash flow projections if the Debtors outperform their projections.

Since the IRS has a combined secured and priority tax claim that is being treated as a consolidated claim for treatment purposes under the Plan, the IRS shall apply all payments received first on account of its allowed secured claim and then to its allowed priority tax claim. The IRS shall retain its lien(s) until the Debtors have paid the full IRS Priority Tax Claim pursuant to this Plan, at which point the IRS will mark the lien(s) satisfied.

Although Revenue has a secured claim in the amount of $0 for purposes of the Plan, Revenue shall retain its lien(s) until the Debtors have paid the full Revenue Priority Tax Claim pursuant to this Plan, at which point Revenue will mark the lien(s) satisfied.

~~For purposes of the Plan, the Debtors have amortized each taxing authorities claim over a five-year period with annual interest at 3%, but payable in equal quarterly payments over a four-year period starting in April of 2022 and ending in December of 2025.~~

| | | |
|---|---|---|
| 3.04 **Statutory fees** | Not applicable. | |
| 3.05 **Prospective quarterly fees** | Not applicable. | |

## Article 4: Treatment of Claims and Interests Under the Plan

4.01 **Claims and interests shall be treated as follows under this Plan:**

| Class | Impairment | Treatment |
|---|---|---|
| Class 1 - **Priority claims** excluding those in Article 3 | ☐ Impaired<br>☐ Unimpaired | There are no priority claims and, accordingly, this Class and its proposed treatment are inapplicable. |
| Class 2 – **Secured claims** | ☐ Impaired<br>☐ Unimpaired | Class 2A consists of the allowed secured claim of Bancorp, which is impaired. Bancorp has a valid and properly recorded first priority mortgage lien on the Debtors' residence. The Debtors will pay Bancorp its regular monthly mortgage payments (along with any applicable escrow) current post-petition. With respect to the prepetition arrearages owed to Bancorp, the arrearage claim shall be paid as follows: ~~upon the natural maturity of the loan.~~ (a) for the 12-month period commencing upon the Effective Date, monthly payments of $500; (b) for the following 24-month period, monthly payments of $2,000; (c) for the following 23-month period, monthly payments of $4,750; and (d) a final payment of the remaining balance owing. If the Debtors fail to make either regular |

| | | |
|---|---|---|
| | | post-petition payments or repayment amounts as outlined by the above payment schedule, Bancorp may send a Notice of Default to Debtors and Debtors' attorney requiring that the delinquent amounts be cured within thirty (30) days of the date of the Notice.  If the Debtors fail to cure the delinquent amounts, Bancorp may file a Certification of Default with the Bankruptcy Court requesting immediate relief from the automatic stay, with the 14-day stay period pursuant to Fed.R.Bankr.P. 4001(a)(3) being waived. <br><br>Class 2B consists of the allowed secured claim of Allegro, which is impaired.  Allegro has a valid and properly perfected, first priority security interest in the Debtors' piano.  The Debtors will pay Allegro its regular monthly loan payments current post-petition.  With respect to the prepetition arrearages owed to Allegro in the filed amount of $3,365.10, the arrearage claim shall be paid by the Debtors in 12 equal monthly installments each in the amount of $280.43 starting on the Effective Date. |
| Class 3 – **Non-priority unsecured creditors** | ☐ Impaired <br> ☐ Unimpaired | Class 3 consists of the claims of non-priority unsecured creditors, which are impaired.  The Debtors believe that there is approximately $941,200~~1,385,000~~~~903,000~~ in unsecured claims in their case consisting of the following: (1) IRS - $746,000~~1,190,000~~~~746,000~~; (2) Revenue - $~~76~~92,000; (3) Wrightstown - $12,500; (4) Council Rock - $9,700; (5) student loans - $45,000; and (4<u>6</u>) general unsecured claims - $36,000. <br><br>Each holder of a Class 3 Claim will be paid from the Debtors' Disposable Income, in cash, pro rata beginning on the first month after the following Classes/Claims have been paid in full: (1) Administrative Expense Claims; and (2) Priority Tax Claims.  Payments shall end upon the five-year anniversary of the Plan. <br><br>According to the Debtors' cash flow projection, payments to unsecured creditors shall begin in January of ~~on January~~ of 2026 and end in Ju<u>ly</u>~~ne~~ of 2026. |
| Class 4 - **Equity security holders of the Debtor** | ☐ Impaired <br> ☐ Unimpaired | The Debtors will retain their interests in property of the estate. |

## Article 5: Allowance and Disallowance of Claims

5.01  **Disputed claim**    A disputed claim is a claim that has not been allowed or disallowed by a final non-appealable order, and as to which either:

(i)    a proof of claim has been filed or deemed filed, and the Debtors or another party in interest has filed an objection; or

(ii) no proof of claim has been filed, and the Debtors have scheduled such claim as disputed, contingent, or unliquidated.

| | | |
|---|---|---|
| 5.02 | **Delay of distribution on a disputed claim** | No distribution will be made on account of a disputed claim unless such claim is allowed by a final non-appealable order. |
| 5.03 | **Settlement of disputed claim** | The Debtors will have the power and authority to settle and compromise a disputed claim with court approval and compliance with Rule 9019 of the Federal Rules of Bankruptcy Procedure. |

## Article 6: Provisions for Executory Contracts and Unexpired Leases

6.01 **Assumed executory contracts and unexpired leases**

(a) The Debtor assumes the following executory contracts and unexpired leases as of the Effective date:
(1) automobile lease with Americredit/GM Financial; (2) automobile lease with Mercedes-Benz Financial Services; and (3) automobile lease with Volkswagen Credit, Inc.

(b) Except for executory contracts and unexpired leases that have been assumed before the Effective Date or under section 6.01(a) of this Plan, or that are the subject of a pending motion to assume, the Debtors will be conclusively deemed to have rejected all executory contracts and unexpired leases as of the Effective Date.

A proof of a claim arising from the rejection of an executory contract or unexpired lease under this section must be filed no later than 30 days after the date of the order confirming this Plan.

## Article 7: Means for Implementation of the Plan

The Plan will be implemented as more fully set forth on the Debtors' cash flow projections attached as Exhibit A. More specifically, the Debtors project generating the aggregate sum of $~~677,050~~ 804,400 ~~12,900~~ that will be distributed to creditors on account of their allowed claims in the following statutory order of priority: (1) administrative expense claims; (2) priority tax claims; and (3) the claims of unsecured creditors.

The Debtors shall have the exclusive right, but shall be under no obligation, to pursue causes of action allowed under applicable law or under the Bankruptcy Code ("Causes of Action"). Although the Debtors are not aware of any Causes of Action, if they do exist, the Debtors shall prosecute them diligently so as to conclude such actions as soon as practicable, with the proceeds therefrom being included in their Disposable Income and paid to creditors in accordance with this Plan.

From and after the Effective Date, the reorganized Debtors may, in the ordinary course and without the necessity of any approval by the Bankruptcy Court, pay the reasonable fees and expenses of professional persons thereafter incurred, including, without limitation, those fees and expenses incurred in connection with the implementation and consummation of the Plan.

## Article 8 : General Provisions

8.01 **Definitions and rules of construction**  Capitalized terms shall have the meaning ascribed to them in this Plan.  The definitions and rules of construction set forth in §§ 101 and 102 of the Code shall apply when terms defined or construed in the Code are used in this Plan.

8.02 **Effective date**  The "Effective Date" of this Plan is the <ins>first business day after</ins> <del>first day of the month following the date that is</del> 14 days after the entry of the confirmation order<ins>, provided that if</ins> <del>.  If, however,</del> a stay of the confirmation order is in effect on that date, the Effective Date will be the first business day after the date on which the stay expires or is otherwise terminated.

8.03 **Severability**  If any provision in this Plan is determined to be unenforceable, the determination will in no way limit or affect the enforceability and operative effect of any other provision of this Plan.

8.04 **Binding effect**  The rights and obligations of any entity named or referred to in this Plan will be binding upon, and will inure to the benefit of the successors or assigns of such entity.

8.05 **Captions**  The headings contained in this Plan are for convenience of reference only and do not affect the meaning or interpretation of this Plan.

8.06 **Controlling effect**  Unless a rule of law or procedure is supplied by federal law (including the Code or the Federal Rules of Bankruptcy Procedure), the laws of the Commonwealth of Pennsylvania govern this Plan and any agreements, documents, and instruments executed in connection with this Plan, except as otherwise provided in this Plan.

8.07 **Corporate governance**  Not applicable.

8.08 **Retention of Jurisdiction**  The Court shall retain jurisdiction of this Case after the Confirmation Date for the following purposes:

(a)   To take any action with respect to the subordination, allowance, disallowance, validity, perfection, enforcement or avoidance of Claims and liens, including, determination of objections to the allowance of claims and amendments to schedules;

(b)   To classify the Claim of any Claimant and to re-examine Claims which have been allowed for purposes of voting, and to determine such objections as may be filed to Claim;

(c)   To determine any and all disputes arising under or the Plan;

(d)   To determine any and all applications for allowance of compensation and reimbursement of expenses herein;

(e)   To determine any applications for rejection of executory contracts and unexpired leases and to determine the amount of any Claims resulting from the rejection thereof or from the rejection of executory contracts or unexpired leases pursuant to the Plan;

(f)   To determine any and all applications, adversary proceedings and contested and litigated matters

pending in the Case as of the Confirmation Date or filed within one hundred eighty days thereafter;

(g) To hear, determine and enforce any Code created Causes of Action and to authorize prosecution of same in such other courts as may be required by law;

(h) To modify any provision of the Plan to the full extent permitted by the Code;

(i) To correct any defect, cure any omission or reconcile any inconsistency in the Plan or the Confirmation Order as may be necessary to carry out the purposes, intent and effect of the Plan;

(j) To determine such other matters as may be provided for in the Confirmation Order or as may be authorized under provision of the Code or otherwise deemed appropriate to accomplish the Plan's intent and purpose;

(k) To grant extensions of any deadline set herein;

(l) To enforce all discharge provisions under the Plan;

(m) To enter any order, including injunctions, necessary to enforce the terms of the Plan, and the rights and power of the Debtors under the Code, this Plan and as the Court may deem necessary; and

(n) To enter a Final Order closing this Case.

## Article 9 : Discharge

9.01    If the Debtors' Plan is confirmed under § 1191(a), on the effective date of the Plan, the Debtors will be discharged from any debt that arose before confirmation of this Plan, to the extent specified in § 1141(d)(1)(A) of the Code, except that the Debtor will not be discharged of any debt:

> (i) imposed by this Plan; or
> (ii) to the extent provided in § 1141(d)(2).

If the Debtors' Plan is confirmed under § 1191(b), confirmation of this Plan does not discharge any debt provided for in this Plan until the court grants a discharge on completion of all payments due within the first 5 years of this Plan, or as otherwise provided in § 1192 of the Code. The Debtors will not be discharged from any debt:

> (i) on which the last payment is due after the first 5 years of the plan, or as otherwise provided in § 1192; or
> (ii) excepted from discharge under § 523(a) of the Code, except as provided in Rule 4007(c) of the Federal Rules of Bankruptcy Procedure.

## Article 10 : Other Provisions

1. The Debtors and the Trustee have agreed that the Trustee's services shall terminate once the Debtors have filed a notice of the Effective Date and confirmation that all payments required on the Effective Date have occurred.  For the avoidance of doubt, the Trustee shall file a Report of No Distribution with this Court upon termination of the Trustee's services, upon which the Trustee shall be discharged from all further duties as Trustee in the case.

2. The Debtors shall be responsible for disbursing all payments required pursuant to the Plan over the entire duration of the Plan. ~~None.~~ Within 15 days of the close of each calendar quarter during the entire post-confirmation period, the Debtors shall file a report setting forth the calculation of the Disposable Income distributable to creditors for the immediately preceding calendar quarter. If any party who is entitled to a distribution under the Plan believes that the Debtors have failed to comply with their payment obligations under the Plan, any such creditor shall first provide the Debtors with a notice of default (with a copy by e-mail to the Debtors' undersigned counsel) and providing the Debtors with 30 days to cure any such default. If the Debtors fail to fully cure any such default, any such creditor shall have the right to seek appropriate relief from the Bankruptcy Court.

Respectfully submitted,

*/s/ Richard W. Johnson, Jr.*_____

*Richard W. Johnson, Jr.*

*/s/ Alyse M. Johnson*_____

*Alyse M. Johnson*

/s/ David B. Smith
David B. Smith, Esquire
SMITH KANE HOLMAN, LLC
112 Moores Road, Suite 300
Malvern, PA 19355
Tel: (610) 407-7217
Fax: (610) 407-7218
dsmith@skhlaw.com
Counsel to the Debtors