| Fill in this information to identify the case: |
|---|
| Debtor Name:  Richard W. Johnson, Jr. and Alyse M. Johnson |
| United States Bankruptcy Court for the Eastern District of Pennsylvania |
| Case number: 21-10054 |

  __X__   Check if this is an amended filing

Official Form 425A

# Plan of Reorganization for Small Business Under Chapter 11    02/20

Richard W. Johnson, Jr. and Alyse M. Johnson's (the "Debtors") ~~Modified~~ Second Amended Plan of Reorganization, Dated ~~July 22~~<u>August 2</u>, 2022 (the "Plan")

## Background for Cases Filed Under Subchapter V

### A. Description and History of the Debtor's Business

The Debtors have been married since 1997.  Mr. Johnson is an attorney licensed to practice since 1993.  Since 1996, Mr. Johnson has conducted his law practice as a sole proprietorship, which is affiliated with a law firm that compensates Mr. Johnson for recoveries achieved by Mr. Johnson on files (mainly in the nature of personal injury) on which he works.  Although Mrs. Johnson is employed, the majority of the marital income is generated by Mr. Johnson.

For some time, the Debtors have been addressing their unpaid tax liabilities in arrears until calendar year 2020, when the Covid-19 pandemic had a catastrophic effect on Mr. Johnson's law practice due to the closure of the various court systems.  Unable to litigate cases and generate his regular contingency income therefrom, the Debtors' income in 2020 sharply declined by about 40% from the prior year's income.  With increased pressure from the taxing authorities for payments, which the Debtors were unable to make, the Debtors filed the within chapter 11, Subchapter V case for the primary purpose of providing a more orderly way to pay their taxes in arrears and other obligations.

### B. Liquidation Analysis

To confirm the Plan, the Court must find that all creditors and equity interest holders who do not accept the Plan will receive at least as much under the Plan as such claim and equity interest holders would receive in a chapter 7 liquidation. The mortgage balance on the Debtors' residence exceeds the value of the residence, and their remaining assets are fully secured and encumbered by a purchase money lien, six federal tax liens and three Pennsylvania Department of Revenue liens.   Accordingly, if the Debtors' assets were to be liquidated, unsecured creditors would receive nothing because the Debtors have no equity in their assets.

### C. Ability to make future plan payments and operate without further reorganization

The Debtors must also show that they will have enough cash over the life of the Plan to make the required Plan payments and operate their business.

The Debtors has provided projected financial information as attached Exhibit "A," which projections <u>reflect quarterly distributions to creditors starting in January of 2022 and ending in December of 2025.</u>  ~~assume that the "Effective Date" (as defined in Section 8.02 below) will occur in August of 2021, although the actual Effective Date is expected to be in December~~ <u>August</u> of 202<u>2</u>~~1~~. <u>Distributions began prior to confirmation of the within Plan and prior to the "Effective Date" (as defined in Section 8.02 below) because of concerns raised by various parties regarding the feasibility of the Plan.  As result, the Debtors, the Office of the United</u>

States Trustee, the Pennsylvania Department of Revenue and the Internal Revenue of Service entered into a certain Interim Order Pending Confirmation, which was approved by the Bankruptcy Court on January 6, 2022, in which the Debtors agreed to, among other things, make quarterly distributions to various taxing authorities on account of their respective allowed priority and, where applicable, secured claims.  Conceptually, these payments were intended to mirror distributions to those parties as if the Debtors' Plan was confirmed and implemented, with the idea being that the Debtors' compliance therewith (or lack thereof) would provide the parties with an indicator of the ultimate feasibility of the Plan.  In fact, the Debtors complied with all of their obligations in the foregoing interim order.

The Debtors' financial projections show that the Debtors will have projected "Disposable Income" (as defined by § 1191(d) of the Bankruptcy Code) for the Plan term selected five-year period described in § 119 1(c)(2) of $794,1005456,089, although pursuant to an agreement reached between the Debtors and the Internal Revenue Service, the Debtors' quarterly payment obligations to the Internal Revenue Service on account of its allowed claim will continue through December of 2027, all as more fully set forth in a Stipulation of Settlement Regarding United States' Objection to Plan between the Debtors and the Internal Revenue Service (the "IRS Stipulation").

The final Plan payment is expected to be paid in July December of 20265.

**You should consult with your accountant or other financial advisor if you have any questions pertaining to these projections**

## Article 1: Summary

This Plan under chapter 11 of the Bankruptcy Code (the "Code") proposes to pay creditors of the Debtors from Disposable Income as more fully set forth in this Plan.

| This Plan provides for: | 0 | classes of priority claims; |
| | 2 | classes of secured claims; |
| | 1 | classes of non-priority unsecured clams; and |
| | 2 | classes of equity security holders. |

Non-priority unsecured creditors holding allowed claims are expected to receive distributions, which the proponent of this Plan has valued at approximately 176% of their unsecured claims. This Plan also provides for the payment of administrative and priority claims.

All creditors and equity security holders should refer to Articles 3 through 6 of this Plan for information regarding the precise treatment of their claim. Your rights may be affected. You should read these papers carefully and discuss them with your attorney, if you have one. (If you do not have an attorney, you may wish to consult one.)

## Article 2: Classification of Claims and Interests

2.01 **Class 1** .............................. There are no allowed claims entitled to priority under § 507(a) of the Code (except administrative expense claims under § 507(a)(2) and priority tax claims under § 507(a)(8)) and, thus, no creditors in Class 1.

2.02 **Class 2** .................................. Class 2 consists of the following claims, to the extent allowed as a secured claim under § 506 of the Code:

Class 2A consists of the allowed secured claim of The Bancorp Bank ("Bancorp), which has a valid and properly secured first priority mortgage on the Debtors' residence.

|  |  |  |
|---|---|---|
|  |  | Class 2B consists of the allowed secured claim of Allegro Credit ("Allegro"), which is secured by a first priority, purchase money security interest in the Debtors' piano. |
| 2.03 | **Class 3** ............................. | Class 3 consists of all non-priority unsecured claims allowed under § 502 of the Code. |
| 2.04 | **Class 4** ............................. | Equity interests of the individual Debtors in property of the estate. |

## Article 3: Treatment of Administrative Expense Claims, Priority Tax Claims, and Quarterly and Court Fees

| | | |
|---|---|---|
| 3.01 | **Unclassified claims** | Under section § 1123(a)(1), administrative expense claims and priority tax claims are not in classes. |
| 3.02 | **Administrative expense claims** | "Administrative Expense Claims" shall consist of the allowed claims of the Debtors' court-employed professionals, along with the Subchapter V Trustee (the "Trustee"). The Debtors estimate that the aggregate amount of allowed administrative expense claims shall not exceed $~~45,000~~67,500. Each holder of an administrative expense claim allowed under § 503 of the Code will be paid pro rata from the Debtors' Disposable Income based upon their claims as allowed by this Court starting in September of 2022 ~~on the Effective Date of the Plan and continuing each month thereafter until paid in full~~. The Debtors have already paid $29,770 in administrative fees during the pendency of this case. An additional $25,201 shall be paid in September of 2022, with the remaining ~~anticipated~~ unpaid balance ~~of $12,507~~ expected to be paid in full in June of 2023. ~~As projected, the Debtors believe that all Administrative Expense Claims shall be paid in full in monthly payments through January of 2022.~~ |
| 3.03 | **Priority tax claims** | Holders of priority tax claims consist of the Internal Revenue Service (the "IRS") (for purposes of treatment under the Plan, the IRS secured claim shall be included in the treatment of the IRS priority tax claim as set forth below), Pennsylvania Department of Revenue ("Revenue") and local income taxes payable to Council Rock School District ("Council Rock") and the Township of Wrightstown ("Wrightstown"). |
| | | Each holder of a priority tax claim, with interest that accrues thereon at the annual rate of 3%, will be paid each calendar quarter from the Debtors' Disposable Income pro rata starting retroactively in April ~~December January~~ of 2022 and continuing through ~~until paid in full by September December~~ of 202~~5~~6~~5~~, which is within 60 months from the Petition Date. |
| | | For purposes of the Plan, and except for the IRS, the Debtors have amortized each taxing authorities' priority claim over a five-year period with annual interest at 3%, but payable as set forth in Exhibit A starting in |

January of 2022 ~~in 153~~ quarterly payments starting in April ~~December of 2022~~ and ending in ~~September~~December of 2025.

~~Pursuant to a stipulation with the IRS, t~~The Debtors have amortized the IRS's priority claim over a seven-year period with annual interest at 3%, but payable through December of 2025 as set forth in Exhibit A and then continuing as per the IRS Stipulation~~in~~ through December of 2027 ~~21 quarterly payments starting in December of 2022 and ending in December of 2027. The IRS has agreed to allow $182,200 of its priority tax claim to be paid outside of the Plan.~~

~~Holders of priority tax claims consist of the Internal Revenue Service (the "IRS") (for purposes of treatment under the Plan, the IRS secured claim shall be included in the treatment of the IRS priority tax claim as set forth below), Pennsylvania Department of Revenue ("Revenue") and local income taxes payable to Council Rock School District ("Council Rock") and the Township of Wrightstown ("Wrightstown").~~

The IRS has an allowed secured claim of $58,728.42 and an allowed priority tax claim of $405,315.31 for a combined claim of $464,043.73. Interest that would accrue on $464,043.73 at an annual rate of 3% and amortized over a<u>n</u> <u>84</u>~~60~~-month period is equal to $<u>51,006.39</u>~~36,251.76~~, which results in the IRS having an allowed priority tax claim of $<u>515,050.12</u> ~~500,295.49~~ (the "IRS Priority Tax Claim").

Revenue has an allowed secured claim of $0 pursuant to Bankruptcy Code § 506(a) and an allowed priority tax claim of $69,336.74. Interest that would accrue on $69,336.74 at an annual rate of 3% and amortized over a 60-month period is equal to $5,416.69, which results in Revenue having an allowed priority tax claim of $74,753.43 (the "Revenue Priority Tax Claim").

Council Rock has an allowed priority tax claim of $6,624.24. Interest that would accrue on $6,624.24 at an annual rate of 3% and amortized over a 60-month period is equal to $517.50, which results in Council Rock having an allowed priority tax claim of $7,141.74 (the "Council Rock Priority Tax Claim").

Wrightstown has an allowed priority tax claim of $8,771.56. Interest that would accrue on $8,771.56 at an annual rate of 3% and amortized over a 60-month period is equal to $685.25, which results in Wrightstown having an allowed priority tax claim of $9.456.81 (the "Wrightstown Priority Tax Claim").

The aggregate priority tax claims, with interest, as calculated above are as follows and therefore are entitled to the corresponding pro rata percentage of each priority tax claim payment made under the Plan:

| | | |
|---|---|---|
| IRS | $<u>515,050.12</u> ~~500,295.49~~ | (84.<u>9</u>~~6~~%) |
| Revenue | $74,753.43 | (12.<u>3</u>~~6~~%) |
| Council Rock | $7,141.74 | (1.2%) |
| Wrightstown | $9,456.81 | (1.6%) |

| | |
|---|---|
| Total | $606,402.10591,647.47 |

Commencing in April December of 2022 and continuing thereafter through September December of 2025 (i.e., within the five-year anniversary of the filing of the Debtors' bankruptcy case), the Debtors shall make the quarterly payments set forth in the cash flow projections at Exhibit A in the category entitled "Priority Tax Claims," which payments shall be allocated between the taxing authorities consistent with the above pro rata percentages. The foregoing quarterly tax payments are sufficient, in the aggregate, to pay all allowed non-IRS priority tax claims (with interest at the annual rate of 3%) in full and within the five-year statutory time frame that the Debtors are permitted to do so. Furthermore, the Debtors have agreed to make payments to the taxing authorities on account of their respective priority tax claims at intervals sooner and/or in amounts greater than those set forth in the cash flow projections if the Debtors outperform their projections.

Since the IRS has a combined secured and priority tax claim that is being treated as a consolidated claim for treatment purposes under the Plan and the IRS Stipulation, the IRS shall apply all payments received first on account of its allowed secured claim and then to its allowed priority tax claim. Pursuant to the stipulation executed between the Debtors and the IRS, The IRS shall retain its lien(s) until the obligations secured by said lien(s) has been paid in fullDebtors have paid the full IRS Priority Tax Claim pursuant to this Plan, at which point the IRS will mark the lien(s) satisfied. the $182,200 that the Debtors will pay to the IRS outside of the Plan is not forgiven and will be exempt from discharge, and the IRS shall retain its lien(s) after discharge until the Debtors have paid the full IRS priority tax claim, at which point the IRS shall mark the lien(s) satisfied. Repayment of the full amount of the IRS Priority Tax Claim after Plan completion, in addition to the rights and duties of the parties with respect thereof, shall be governed by the terms of the stipulation.

Although Revenue has a secured claim in the amount of $0 for purposes of the Plan, Revenue shall retain its lien(s) until the Debtors have paid the full Revenue Priority Tax Claim pursuant to this Plan, at which point Revenue will mark the lien(s) satisfied.

| | |
|---|---|
| 3.04 **Statutory fees** | Not applicable. |
| 3.05 **Prospective quarterly fees** | Not applicable. |

## Article 4: Treatment of Claims and Interests Under the Plan

4.01 **Claims and interests shall be treated as follows under this Plan:**

| Class | Impairment | Treatment |
|---|---|---|

| Class 1 - **Priority claims** excluding those in Article 3 | ☐ Impaired<br>☐ Unimpaired | There are no priority claims and, accordingly, this Class and its proposed treatment are inapplicable. |
|---|---|---|
| Class 2 – **Secured claims** | ☐ Impaired<br>☐ Unimpaired | Class 2A consists of the allowed secured claim of Bancorp, which is impaired. Bancorp has a valid and properly recorded first priority mortgage lien on the Debtors' residence. The Debtors will pay Bancorp its regular monthly mortgage payments (along with any applicable escrow) current post-petition. With respect to the prepetition arrearages owed to Bancorp, the arrearage claim shall be paid as follows: (a) for the 12-month period commencing upon August of 2021, monthly payments of $500; (b) for the following 24-month period, monthly payments of $2,000; (c) for the following 23-month period, monthly payments of $4,750; and (d) a final payment of the remaining balance owing. If the Debtors fail to make either regular post-petition payments or repayment amounts as outlined by the above payment schedule, Bancorp may send a Notice of Default to Debtors and Debtors' attorney requiring that the delinquent amounts be cured within thirty (30) days of the date of the Notice. If the Debtors fail to cure the delinquent amounts, Bancorp may file a Certification of Default with the Bankruptcy Court requesting immediate relief from the automatic stay, with the 14-day stay period pursuant to Fed.R.Bankr.P. 4001(a)(3) being waived.<br><br>Class 2B consists of the allowed secured claim of Allegro, which is impaired. Allegro has a valid and properly perfected, first--priority security interest in the Debtors' piano. The Debtors will pay Allegro its regular monthly loan payments current post-petition. With respect to the prepetition arrearages owed to Allegro in the filed amount of $3,365.10, the arrearage claim shall be paid by the Debtors in 12 equal monthly installments each in the amount of $280.43 starting in July of 2021. |
| Class 3 – **Non-priority unsecured creditors** | ☐ Impaired<br>☐ Unimpaired | Class 3 consists of the claims of non-priority unsecured creditors, which are impaired. The Debtors believe that there is approximately $907,000 in unsecured claims in their case consisting of the following: (1) IRS - $746,000; (2) Revenue - $77,000; (3) Wrightstown - $12,500; (4) Council Rock - $9,700; (5) student loans - $45,000; and (6) general unsecured claims - $16,800.<br><br>Each holder of a Class 3 Claim will be paid from the Debtors' Disposable Income, in cash, pro rata beginning on the first ~~month~~ quarter after the Administrative Expense Claims ~~following Classes/Claims~~ have been paid in full. Quarterly payments to Class 3 shall consist of any disposable income remaining after scheduled payments have been made on the quarterly Priority Tax Claims. ~~.~~ |

| | | | |
|---|---|---|---|
| | | | (1) Administrative Expense Claims; and (2) Priority Tax Claims. The final quarterly Plan pPayment to Class 3s shall be madke in end in JulyDecember of 20256.<br><br>According to the Debtors' cash flow projection, payments to unsecured creditors shall begin in the quarter starting December June of 20253 and the quarter ending end in July December of 20265. |
| Class 4 - **Equity security holders of the Debtor** | ☐ | Impaired<br>Unimpaired | The Debtors will retain their interests in property of the estate. |
| | ☐ | | |

## Article 5: Allowance and Disallowance of Claims

5.01  **Disputed claim**    A disputed claim is a claim that has not been allowed or disallowed by a final non-appealable order, and as to which either:

(i)    a proof of claim has been filed or deemed filed, and the Debtors or another party in interest has filed an objection; or

(ii)    no proof of claim has been filed, and the Debtors have scheduled such claim as disputed, contingent, or unliquidated.

5.02  **Delay of distribution on a disputed claim**    No distribution will be made on account of a disputed claim unless such No distribution will be made on account of a disputed claim unless such claim is allowed by a final non-appealable order.

5.03  **Settlement of disputed claim**    The Debtors will have the power and authority to settle and compromise a disputed claim with court approval and compliance with Rule 9019 of the Federal Rules of Bankruptcy Procedure.

## Article 6: Provisions for Executory Contracts and Unexpired Leases

6.01  **Assumed executory contracts and unexpired leases**    (a) The Debtors assumes the following executory contracts and unexpired contracts and unexpired leases as of the Effective date:
(1) automobile lease with Americredit/GM Financial; (2) automobile lease with Mercedes-Benz Financial Services; and (3) automobile lease with Volkswagen Credit, Inc.

(b) Except for executory contracts and unexpired leases that have been assumed before the Effective Date or under section 6.01(a) of this Plan, or that are the subject of a pending motion to assume, the Debtors will be conclusively deemed to have rejected all executory contracts and unexpired leases as of the Effective Date.

A proof of a claim arising from the rejection of an executory contract or

unexpired lease under this section must be filed no later than 30 days after the date of the order confirming this Plan.

___

## Article 7: Means for Implementation of the Plan

The Plan will be implemented as more fully set forth on the Debtors' cash flow projections attached as Exhibit A.  More specifically, the Debtors project generating the aggregate sum of $5456,089 794,100 that will be distributed to creditors on account of their allowed claims in the following statutory order of priority: (1) administrative expense claims; (2) priority tax claims; and (3) the claims of unsecured creditors.

The Debtors shall have the exclusive right, but shall be under no obligation, to pursue causes of action allowed under applicable law or under the Bankruptcy Code ("Causes of Action"). Although the Debtors are not aware of any Causes of Action, if they do exist, the Debtors shall prosecute them diligently so as to conclude such actions as soon as practicable, with the proceeds therefrom being included in their Disposable Income and paid to creditors in accordance with this Plan.

From and after the Effective Date, the reorganized Debtors may, in the ordinary course and without the necessity of any approval by the Bankruptcy Court, pay the reasonable fees and expenses of professional persons thereafter incurred, including, without limitation, those fees and expenses incurred in connection with the implementation and consummation of the Plan.

## Article 8 : General Provisions

| | |
|---|---|
| 8.01 **Definitions and rules of construction** | of construction Capitalized terms shall have the meaning ascribed to them in this Plan.  The definitions and rules of construction set forth in §§ 101 and 102 of the Code shall apply when terms defined or construed in the Code are used in this Plan. |
| 8.02 **Effective date** | The "Effective Date" of this Plan is the first business day after 14 days after the entry of the confirmation order, provided that if a stay of the confirmation order is in effect on that date, the Effective Date will be the first business day after the date on which the stay expires or is otherwise terminated. |
| 8.03 **Severability** | If any provision in this Plan is determined to be unenforceable, the determination will in no way limit or affect the enforceability and operative effect of any other provision of this Plan. |
| 8.04 **Binding effect** | The rights and obligations of any entity named or referred to in this Plan will be binding upon, and will inure to the benefit of the successors or assigns of such entity. |
| 8.05 **Captions** | The headings contained in this Plan are for convenience of reference only and do not affect the meaning or interpretation of this Plan. |

___

| | |
|---|---|
| 8.06 **Controlling effect** | Unless a rule of law or procedure is supplied by federal law (including the Code or the Federal Rules of Bankruptcy Procedure), the laws of the Commonwealth of Pennsylvania govern this Plan and any agreements, documents, and instruments executed in connection with this Plan, except as otherwise provided in this Plan. |
| 8.07 **Corporate governance** | Not applicable. |
| 8.08 **Retention of Jurisdiction** | The Court shall retain jurisdiction of this Case after the Confirmation Date for the following purposes: |

(a) To take any action with respect to the subordination, allowance, disallowance, validity, perfection, enforcement or avoidance of Claims and liens, including, determination of objections to the allowance of claims and amendments to schedules;

(b) To classify the Claim of any Claimant and to re-examine Claims which have been allowed for purposes of voting, and to determine such objections as may be filed to Claim;

(c) To determine any and all disputes arising under or the Plan;

(d) To determine any and all applications for allowance of compensation and reimbursement of expenses herein;

(e) To determine any applications for rejection of executory contracts and unexpired leases and to determine the amount of any Claims resulting from the rejection thereof or from the rejection of executory contracts or unexpired leases pursuant to the Plan;

(f) To determine any and all applications, adversary proceedings and contested and litigated matters pending in the Case as of the Confirmation Date or filed within one hundred eighty days thereafter;

(g) To hear, determine and enforce any Code created Causes of Action and to authorize prosecution of same in such other courts as may be required by law;

(h) To modify any provision of the Plan to the full extent permitted by the Code;

(i) To correct any defect, cure any omission or reconcile any inconsistency in the Plan or the Confirmation Order as may be necessary to carry out the purposes, intent and effect of the Plan;

(j) To determine such other matters as may be provided for in the Confirmation Order or as may be authorized under provision of the Code or otherwise deemed appropriate to accomplish the Plan's intent and purpose;

(k) To grant extensions of any deadline set herein;

(l) To enforce all discharge provisions under the Plan;

(m) To enter any order, including injunctions, necessary to enforce the terms of the Plan, and the rights and power of the Debtors under the Code, this Plan and as the Court may deem necessary; and

(n)     To enter a Final Order closing this Case.

## Article 9 : Discharge

9.01     If the Debtors' Plan is confirmed under § 1191(a), on the effective date of the Plan, the Debtors will be discharged from any debt that arose before confirmation of this Plan, to the extent specified in § 1141(d)(1)(A) of the Code, except that the Debtor will not be discharged of any debt:

> (i) imposed by this Plan; or
> (ii) to the extent provided in § 1141(d)(2).

If the Debtors' Plan is confirmed under § 1191(b), confirmation of this Plan does not discharge any debt provided for in this Plan until the court grants a discharge on completion of all payments <u>under</u> ~~due within the first 5 years of~~ this Plan, or as otherwise provided in § 1192 of the Code. The Debtors will not be discharged from any debt:

> (i) on which the last payment is due after the first 5 years of the plan, or as otherwise provided in § 1192; or
> (ii) excepted from discharge under § 523(a) of the Code, except as provided in Rule 4007(c) of the Federal Rules of Bankruptcy Procedure.

## Article 10 : Other Provisions

1. ~~The Debtors and the Trustee have agreed that the Trustee's services shall terminate once the Debtors have filed a notice of the Effective Date and confirmation that all payments required on the Effective Date have occurred. For the avoidance of doubt, the Trustee shall file a Report of No Distribution with this Court upon termination of the Trustee's services, upon which the Trustee shall be discharged from all further duties as Trustee in the case.~~

2. The Debtors shall be responsible for disbursing all payments required pursuant to the Plan over the entire duration of the Plan. Within 15 days of the close of each calendar quarter during the entire post-confirmation period, the Debtors shall file a report setting forth the calculation of the Disposable Income distributable to creditors for the immediately preceding calendar quarter. If any party who is entitled to a distribution under the Plan believes that the Debtors have failed to comply with their payment obligations under the Plan, any such creditor shall first provide the Debtors with a notice of default (with a copy by e-mail to the Debtors' undersigned counsel) and providing the Debtors with 30 days to cure any such default. If the Debtors fail to fully cure any such default, any such creditor shall have the right to seek appropriate relief from the Bankruptcy Court.

Respectfully submitted,

/s/ Richard W. Johnson, Jr.
Richard W. Johnson, Jr.


/s/ Alyse M. Johnson
Alyse M. Johnson


/s/ David B. Smith
David B. Smith, Esquire
SMITH KANE HOLMAN, LLC
112 Moores Road, Suite 300
Malvern, PA 19355
Tel: (610) 407-7217
Fax: (610) 407-7218
dsmith@skhlaw.com
Counsel to the Debtors

# Exhibit A

## Cash Flow 2022

| | January 2022 | February 2022 | March 2022 | April 2022 | May 2022 | June 2022 | July 2022 | August 2022 | September 2022 | October 2022 | November 2022 | December 2022 | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Carry Over Balance | $10,000 | | $14,530 | | $8,000 | $16,000 | | $10,300 | $19,100 | $2,889 | $11,389 | $20,389 | |
| Husband's Net Fee Income | $60,000.00 | $60,000.00 | $45,000.00 | $45,000.00 | $45,000.00 | $45,000.00 | $51,000.00 | $51,000.00 | $51,000.00 | $51,000.00 | $51,000.00 | $51,000.00 | $606,000.00 |
| Tax Escrow | $15,000.00 | $15,000.00 | $9,000.00 | $9,000.00 | $9,000.00 | $9,000.00 | $12,000.00 | $12,000.00 | $12,000.00 | $12,000.00 | $12,000.00 | $12,000.00 | $138,000.00 |
| Husband's Net Income | $45,000.00 | $45,000.00 | $36,000.00 | $36,000.00 | $36,000.00 | $36,000.00 | $39,000.00 | $39,000.00 | $39,000.00 | $39,000.00 | $39,000.00 | $39,000.00 | $468,000.00 |
| Wife's Net Income | $1,500.00 | $1,800.00 | $3,000.00 | $1,500.00 | $1,500.00 | $1,000.00 | $800.00 | $800.00 | $1,500.00 | $1,500.00 | $1,500.00 | $1,500.00 | $17,900.00 |
| Total - Income/Carry Over Balance | $56,500.00 | $46,800.00 | $53,530.00 | $37,500.00 | $45,500.00 | $53,000.00 | $39,800.00 | $50,100.00 | $59,600.00 | $43,389.00 | $51,889.00 | $60,889.00 | $598,497.00 |
| **Disbursements** | | | | | | | | | | | | | |
| Household expenses | $29,000.00 | $29,000.00 | $29,000.00 | $29,000.00 | $29,000.00 | $28,470.00 | $29,000.00 | $29,000.00 | $29,000.00 | $29,000.00 | $29,000.00 | $29,000.00 | $347,470.00 |
| Mortgage Arrears | $500.00 | $500.00 | $500.00 | $500.00 | $500.00 | $500.00 | $500.00 | $2,000.00 | $2,000.00 | $2,000.00 | $2,000.00 | $2,000.00 | $13,500.00 |
| Professional Fees | | | | | | | | | $500.00 | $1,000.00 | $500.00 | $953.00 | $2,953.00 |
| Total Disbursements | $29,500.00 | $29,500.00 | $29,500.00 | $29,500.00 | $29,500.00 | $28,970.00 | $29,500.00 | $31,000.00 | $31,500.00 | $32,000.00 | $31,500.00 | $31,953.00 | $363,923.00 |
| **Monthly Disposable Income** | **$27,000.00** | **$17,300.00** | **$24,030.00** | **$8,000.00** | **$16,000.00** | **$24,030.00** | **$10,300.00** | **$19,100.00** | **$28,100.00** | **$11,389.00** | **$20,389.00** | **$28,936.00** | **$234,574.00** |
| **Plan Disbursements** | | | | | | | | | | | | | |
| Amount Available | $27,000.00 | $2,770.00 | $24,030.00 | | | $24,030.00 | | | $28,100.00 | | | $28,936.00 | $134,866.00 |
| **Disbursements** | | | | | | | | | | | | | |
| Administrative Expenses | $27,000.00 | $2,770.00 | | | | | | | $25,201.43 | | | $0.00 | $54,971.43 |
| Priority Tax Claims | | | | | | | | | | | | | |
| *Internal Revenue Service | | | $18,395.00 | | | $18,395.00 | | | | | | $22,775.00 | $59,565.00 |
| *PA Department of Revenue | | | $4,605.00 | | | $4,605.00 | | | | | | $5,042.00 | $14,252.00 |
| *Council Rock School District | | | $440.00 | | | $440.00 | | | | | | $482.00 | $1,362.00 |
| *Township of Wrightstown | | | $590.00 | | | $590.00 | | | | | | $637.00 | $1,817.00 |
| Unsecured Creditors | | | | | | | | | | | | | |
| **Total** | **$27,000.00** | **$2,770.00** | **$24,030.00** | | | **$24,030.00** | | | **$25,201.43** | | | **$28,936.00** | **$131,967.43** |

## Cash Flow 2023

| | 2023 January | 2023 February | 2023 March | 2023 April | 2023 May | 2023 June | 2023 July | 2023 August | 2023 September | 2023 October | 2023 November | 2023 December | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Carry Over Balance | | | | | | | | | | | | | |
| Husband's Net Fee Income | $51,000.00 | $51,000.00 | $51,000.00 | $61,000.00 | $61,000.00 | $61,000.00 | $61,000.00 | $61,000.00 | $61,000.00 | $61,000.00 | $61,000.00 | $61,000.00 | $702,000.00 |
| Tax Escrow | $12,000.00 | $12,000.00 | $12,000.00 | $16,000.00 | $16,000.00 | $16,000.00 | $16,000.00 | $16,000.00 | $16,000.00 | $16,000.00 | $16,000.00 | $16,000.00 | $180,000.00 |
| Husband's Net Income | $39,000.00 | $39,000.00 | $39,000.00 | $45,000.00 | $45,000.00 | $45,000.00 | $45,000.00 | $45,000.00 | $45,000.00 | $45,000.00 | $45,000.00 | $45,000.00 | $522,000.00 |
| Wife's Net Income | $1,600.00 | $1,600.00 | $3,200.00 | $1,600.00 | $1,600.00 | $1,100.00 | $900.00 | $900.00 | $1,600.00 | $1,600.00 | $1,600.00 | $1,600.00 | $18,900.00 |
| Total - Income/Carry Over Balance | $40,600.00 | $40,600.00 | $42,200.00 | $46,600.00 | $46,600.00 | $46,100.00 | $45,900.00 | $45,900.00 | $46,600.00 | $46,600.00 | $46,600.00 | $46,600.00 | $540,900.00 |
| **Disbursements** | | | | | | | | | | | | | |
| Household expenses | $29,000.00 | $29,000.00 | $29,000.00 | $29,000.00 | $29,000.00 | $29,000.00 | $29,000.00 | $29,000.00 | $29,000.00 | $29,000.00 | $29,000.00 | $29,000.00 | $348,000.00 |
| Mortgage Arrears | $2,000.00 | $2,000.00 | $2,000.00 | $2,000.00 | $2,000.00 | $2,000.00 | $2,000.00 | $2,000.00 | $2,000.00 | $2,000.00 | $2,000.00 | $2,000.00 | $24,000.00 |
| Professional Fees | $500.00 | $500.00 | $464.00 | $500.00 | $500.00 | $500.00 | $500.00 | $500.00 | $500.00 | $500.00 | $500.00 | $500.00 | $5,964.00 |
| Total Disbursements | $31,500.00 | $31,500.00 | $31,464.00 | $31,500.00 | $31,500.00 | $31,500.00 | $31,500.00 | $31,500.00 | $31,500.00 | $31,500.00 | $31,500.00 | $31,500.00 | $377,964.00 |
| **Monthly Disposable Income** | **$9,100.00** | **$9,100.00** | **$10,736.00** | **$15,100.00** | **$15,100.00** | **$14,600.00** | **$14,400.00** | **$14,400.00** | **$15,100.00** | **$15,100.00** | **$15,100.00** | **$15,100.00** | **$162,936.00** |
| **Plan Disbursements** | | | | | | | | | | | | | |
| Amount Available for Distribution | | | $28,936.00 | | | $44,800.00 | | | $43,900.00 | | | $45,300.00 | $162,936.00 |
| **Disbursements** | | | | | | | | | | | | | |
| Administrative Expenses | | | $0.00 | | | $15,864.00 | | | $0.00 | | | $0.00 | $15,864.00 |
| Priority Tax Claims | | | | | | | | | | | | | |
| *Internal Revenue Service | | | $22,775.00 | | | $22,775.00 | | | $22,775.00 | | | $22,775.00 | $91,100.00 |
| *PA Department of Revenue | | | $5,042.00 | | | $5,042.00 | | | $5,042.00 | | | $5,042.00 | $20,168.00 |
| *Council Rock School District | | | $482.00 | | | $482.00 | | | $482.00 | | | $482.00 | $1,928.00 |
| *Township of Wrightstown | | | $637.00 | | | $637.00 | | | $637.00 | | | $637.00 | $2,548.00 |
| Unsecured Creditors | | | | | | | | | $14,964.00 | | | $16,364.00 | $31,328.00 |
| **Total** | | | **$28,936.00** | | | **$44,800.00** | | | **$43,900.00** | | | **$45,300.00** | **$162,936.00** |

## Cash Flow 2024

| | 2024 January | 2024 February | 2024 March | 2024 April | 2024 May | 2024 June | 2024 July | 2024 August | 2024 September | 2024 October | 2024 November | 2024 December | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Carry Over Balance | | | | | | | | | | | | | |
| Husband's Gross Fee Income | $55,000.00 | $55,000.00 | $55,000.00 | $55,000.00 | $55,000.00 | $55,000.00 | $55,000.00 | $55,000.00 | $55,000.00 | $55,000.00 | $55,000.00 | $55,000.00 | $660,000.00 |
| Tax Escrow | $14,300.00 | $14,300.00 | $14,300.00 | $14,300.00 | $14,300.00 | $14,300.00 | $14,300.00 | $14,300.00 | $14,300.00 | $14,300.00 | $14,300.00 | $14,300.00 | $171,600.00 |
| Husband's Net Income | $40,700.00 | $40,700.00 | $40,700.00 | $40,700.00 | $40,700.00 | $40,700.00 | $40,700.00 | $40,700.00 | $40,700.00 | $40,700.00 | $40,700.00 | $40,700.00 | $488,400.00 |
| Wife's Net Income | $1,650.00 | $1,650.00 | $3,300.00 | $1,650.00 | $1,650.00 | $1,150.00 | $950.00 | $950.00 | $1,650.00 | $1,650.00 | $1,650.00 | $1,650.00 | $19,550.00 |
| Total - Income/Carry Over Balance | $42,350.00 | $42,350.00 | $44,000.00 | $42,350.00 | $42,350.00 | $41,850.00 | $41,650.00 | $41,650.00 | $42,350.00 | $42,350.00 | $42,350.00 | $42,350.00 | $507,950.00 |
| **Disbursements** | | | | | | | | | | | | | |
| Household expenses | $29,000.00 | $29,000.00 | $29,000.00 | $29,000.00 | $29,000.00 | $27,000.00 | $27,000.00 | $27,000.00 | $27,000.00 | $27,000.00 | $27,000.00 | $27,000.00 | $334,000.00 |
| Mortgage Arrears | $2,000.00 | $2,000.00 | $2,000.00 | $2,000.00 | $2,000.00 | $2,000.00 | $2,000.00 | $4,750.00 | $4,750.00 | $4,750.00 | $4,750.00 | $4,750.00 | $37,750.00 |
| Professional Fees | $500.00 | $500.00 | $500.00 | $500.00 | $500.00 | $500.00 | $500.00 | $500.00 | $500.00 | $500.00 | $500.00 | $500.00 | $6,000.00 |
| Total Disbursements | $31,500.00 | $31,500.00 | $31,500.00 | $31,500.00 | $31,500.00 | $29,500.00 | $29,500.00 | $32,250.00 | $32,250.00 | $32,250.00 | $32,250.00 | $32,250.00 | $377,750.00 |
| Monthly Disposable Income | $10,850.00 | $10,850.00 | $12,500.00 | $10,850.00 | $10,850.00 | $12,350.00 | $12,150.00 | $9,400.00 | $10,100.00 | $10,100.00 | $10,100.00 | $10,100.00 | $130,200.00 |
| **Plan Disbursements** | | | | | | | | | | | | | |
| Amount Available for Distribution | | | $34,200.00 | | | $34,050.00 | | | $31,650.00 | | | $30,300.00 | $130,200.00 |
| **Disbursements** | | | | | | | | | | | | | |
| Administrative Expenses | | | | | | | | | | | | | $0.00 |
| Priority Tax Claims | | | | | | | | | | | | | |
| *Internal Revenue Service | | | $22,775.00 | | | $22,775.00 | | | $22,775.00 | | | $22,775.00 | $91,100.00 |
| *PA Department of Revenue | | | $5,042.00 | | | $5,042.00 | | | $5,042.00 | | | $5,042.00 | $20,168.00 |
| *Council Rock School District | | | $482.00 | | | $482.00 | | | $482.00 | | | $482.00 | $1,928.00 |
| *Township of Wrightstown | | | $637.00 | | | $637.00 | | | $637.00 | | | $637.00 | $2,548.00 |
| Unsecured Creditors | | | $5,264.00 | | | $5,114.00 | | | $2,714.00 | | | $1,364.00 | $14,456.00 |
| Total | | | $34,200.00 | | | $34,050.00 | | | $31,650.00 | | | $30,300.00 | $130,200.00 |

## Cash Flow 2025

| | 2025 January | 2025 February | 2025 March | 2025 April | 2025 May | 2025 June | 2025 July | 2025 August | 2025 September | 2025 October | 2025 November | 2025 December | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Carry Over Balance | | | | | | | | | | | | | |
| Husband's Net Fee Income | $55,000.00 | $55,000.00 | $55,000.00 | $55,000.00 | $55,000.00 | $55,000.00 | $55,000.00 | $55,000.00 | $55,000.00 | $55,000.00 | $55,000.00 | $55,000.00 | $660,000.00 |
| Tax Escrow | $14,300.00 | $14,300.00 | $14,300.00 | $14,300.00 | $14,300.00 | $14,300.00 | $14,300.00 | $14,300.00 | $14,300.00 | $14,300.00 | $14,300.00 | $14,300.00 | $171,600.00 |
| Husband's Net Income | $40,700.00 | $40,700.00 | $40,700.00 | $40,700.00 | $40,700.00 | $40,700.00 | $40,700.00 | $40,700.00 | $40,700.00 | $40,700.00 | $40,700.00 | $40,700.00 | $488,400.00 |
| Wife's Net Income | $1,650.00 | $1,650.00 | $3,300.00 | $1,650.00 | $1,650.00 | $1,150.00 | $950.00 | $950.00 | $1,650.00 | $1,650.00 | $1,650.00 | $1,650.00 | $19,550.00 |
| Total - Income/Carry Over Balance | $42,350.00 | $42,350.00 | $44,000.00 | $42,350.00 | $42,350.00 | $41,850.00 | $41,650.00 | $41,650.00 | $42,350.00 | $42,350.00 | $42,350.00 | $42,350.00 | $507,950.00 |
| **Disbursements** | | | | | | | | | | | | | |
| Household expenses | $27,000.00 | $27,000.00 | $27,000.00 | $27,000.00 | $27,000.00 | $27,000.00 | $27,000.00 | $27,000.00 | $27,000.00 | $27,000.00 | $27,000.00 | $27,000.00 | $324,000.00 |
| Mortgage Arrears | $4,750.00 | $4,750.00 | $4,750.00 | $4,750.00 | $4,750.00 | $4,750.00 | $4,750.00 | $4,750.00 | $4,750.00 | $4,750.00 | $4,750.00 | $4,750.00 | $57,000.00 |
| Professional Fees | $500.00 | $500.00 | $500.00 | $500.00 | $500.00 | $500.00 | $500.00 | $500.00 | $464.00 | $500.00 | $500.00 | $500.00 | $5,964.00 |
| Total Disbursements | $32,250.00 | $32,250.00 | $32,250.00 | $32,250.00 | $32,250.00 | $32,250.00 | $32,250.00 | $32,250.00 | $32,214.00 | $32,250.00 | $32,250.00 | $32,250.00 | $386,964.00 |
| Monthly Disposable Income | $10,100.00 | $10,100.00 | $11,750.00 | $10,100.00 | $10,100.00 | $9,600.00 | $9,400.00 | $9,400.00 | $10,136.00 | $10,100.00 | $10,100.00 | $10,100.00 | $120,986.00 |
| **Plan Disbursements** | | | | | | | | | | | | | |
| Amount Available for Distribution | | | $31,950.00 | | | $29,800.00 | | | $28,936.00 | | | $30,300.00 | $120,986.00 |
| **Disbursements** | | | | | | | | | | | | | |
| Administrative Expenses | | | | | | | | | | | | | $0.00 |
| Priority Tax Claims | | | | | | | | | | | | | |
| *Internal Revenue Service | | | $22,775.00 | | | $22,775.00 | | | $22,775.00 | | | $22,775.00 | $91,100.00 |
| *PA Department of Revenue | | | $5,042.00 | | | $5,042.00 | | | $5,042.00 | | | $5,042.00 | $20,168.00 |
| *Council Rock School District | | | $482.00 | | | $482.00 | | | $482.00 | | | $482.00 | $1,928.00 |
| *Township of Wrightstown | | | $637.00 | | | $637.00 | | | $637.00 | | | $637.00 | $2,548.00 |
| Unsecured Creditors | | | $3,014.00 | | | $864.00 | | | $0.00 | | | $1,364.00 | $5,242.00 |
| Total | | | $31,950.00 | | | $29,800.00 | | | $28,936.00 | | | $30,300.00 | $120,986.00 |